IN THE MATTER OF THE TRUSTS CREATED UNDER THE TERMS AND PROVISIONS OF THE LAST WILL AND TESTAMENT OF ANTONIO GOMES DA SILVA, DECEASED.

No. 1892.

SUBMITTED SEPTEMBER 6, 1929.          DECIDED SEPTEMBER 20, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The record in this case shows that Antonio Gomes da Silva died at Honolulu on or about the 12th day of February, 1926. He left a last will and testament by which he devised and bequeathed to Frank Gomes Silva and Union Trust Company, Limited, as trustees, all his estate, to manage and control the same and collect the income therefrom for the benefit of his widow and children. On the 22d day of March, 1926, upon the petition of Frank Gomes Silva and Union Trust Company, the will was duly admitted to probate. No executor being named in the will Frank Gomes Silva and Union Trust Company were duly appointed and qualified as administrators with the will annexed. On the 9th day of May, 1927, the said

administrators having duly filed, and the court having approved their final accounts, they were, by order of the court, relieved and discharged from their trust as such administrators and the estate was finally closed. It was also ordered, adjudged and decreed that all of the rest, residue and remainder of the estate of the testator remaining in the hands and possession of Frank Gomes Silva and Union Trust Company, administrators with the will annexed, be distributed to them as trustees under the will of the testator, Antonio Gomes da Silva, deceased. On the 8th day of May, 1928, the said trustees filed in the circuit court of the first judicial circuit their first annual accounts and prayed that the same be considered, and, if found conformable to the truth, be allowed. The accounts were referred by the presiding judge to a master for examination. On December 7, 1928, the master filed his report. The accounts showed that the trustees had charged the estate with trustees' commissions aggregating the sum of $454.90. The master in his report objected to this amount and recommended that the trustees be surcharged with the sum of $173.43, thus reducing the trustees' commissions to $281.47. The presiding judge adopted the recommendation of the master and ordered the surcharge to be made. The accounts were otherwise approved. The trustees have appealed from the order regarding the surcharge.

The single question involved is whether the trustees' commissions should be calculated in accordance with the provisions of Act 183, L. 1927, or in accordance with section 2544, R. L. 1925. Under the provisions of section 2544 the trustees were entitled to two and one-half per cent on moneys received as capital of the estate and the schedule of ten per cent and seven per cent on the income, which, as shown by the master's report, will amount to $281.47. Under the Act of 1927, which was amendatory

of section 2544, the trustees, if this Act is applicable, were entitled to receive as their commissions one per cent of the value of the trust at its inception, two and one-half per cent on principal received, two and one-half per cent on principal disbursed, and the schedule of ten per cent and seven per cent on income received, which would amount to the sum of $450.90, which was the amount charged by the trustees in their annual accounts. The Act of 1927 was approved by the governor on the 27th day of April, 1927, to take effect on January 1, 1928. The last clause of the Act reads: "These provisions shall apply as well to future accounting in existing estates as to new estates." "Existing estates" undoubtedly means estates or trusts which had been created before January 1, 1928, and were at that time in existence. We think it equally clear that "future accounting" means accounts filed in court in the usual course after that date. If the Act had provided that the increased commissions which it authorized could only be charged against existing estates for services rendered or property coming into the hands of the trustees after the Act became effective it might very well be said that for services rendered and property coming into the hands of the trustees prior to that date the commissions allowed would be limited to the rates established by section 2544. But such is not the language of the Act. Its language very clearly conveys the thought that if there were trust estates, in existence at the time the Act became effective, and *thereafter* there was an *accounting in such estates* the increased commissions are allowable whether the dealings of the trustee, upon which the accounting was based, were before or after the date when the Act became effective. "Accounting is the rendering or delivering of a formal statement of one's dealings." 1 C. J., p. 602, §10. This was done by the trustees of the da Silva estate on the 8th day of May, 1928. The trus-

tees having taken office on the 9th day of May, 1927, the accounting was made within a year from that time and also within the time prescribed by Rule 20 of the circuit court of the first judicial circuit, which provides that it shall be the duty of every trustee, within ten days next after the expiration of one year from the date of his appointment, to make his annual accounting. The trustees are thus relieved of any suspicion of delaying their accounting in order to bring themselves within the provisions of Act 183. The trust estate itself came into existence on the 9th day of May, 1927, that being the date when the property belonging to the estate was distributed to the trustees. It was therefore an "existing estate" on the date when Act 183, by its terms, became effective. The first annual accounting was made in good faith, also after the Act became effective. Under these circumstances we think the commissions provided by Act 183 should have been allowed.

The decree appealed from is reversed and the case is remanded with instructions to approve the accounts.